UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 10-189-GWU

WANDA S. PECK, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Wanda Peck brought this action to obtain judicial review of the unfavorable portion of a partially favorable administrative decision on her applications for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI). The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

        impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional

impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. <u>Id</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

Peck filed applications for DIB and SSI on July 27, 2004 alleging a disability onset date of January 31, 2004. (Tr. 185, 596). The claims were denied initially and upon reconsideration and the claimant pursed administrative remedies. (Tr. 139-140, 601-602). Following two administrative hearings, an Administrative Law Judge (ALJ) issued a partially favorable decision finding Peck disabled as of August 8, 2007 but not before. (Tr. 120-132). This decision became final for the Commissioner when the Appeals Council found no reason for review on July 15, 2010. (Tr. 7-9).

In the partially favorable decision, the ALJ determined that, as of August 8, 2007, Peck, a 55-year-old former billing clerk, suffered from impairments related

to obesity, degenerative disc disease of the lumbar spine, degenerative joint disease of the knees and an anxiety disorder. (Tr. 122, 131-132). The plaintiff would be limited to a restricted range of sedentary level work. (Tr. 129). Since she would be precluded from returning to her past relevant work, Rule 201.06 of the Medical-Vocational Guidelines would mandate a finding of disabled status. (Tr. 132). For the period prior to August 8, 2007, the ALJ concluded that the claimant's mental problems were not severe. (Tr. 123, 130). In the absence of these mental problems, the ALJ determined that Peck would be able to perform her past relevant work as a billing clerk and, so, she could not be considered totally disabled prior to this date. (Tr. 131-132).

After review of the evidence presented, the undersigned concludes that the unfavorable portion of the ALJ's decision is not supported by substantial evidence. However, the current record also does not mandate an immediate award of Social Security benefits. Therefore, the court must grant the plaintiff's summary judgment motion in so far as it seeks a remand of the action for further consideration and deny that of the defendant.

Peck alleged a disability onset date of January 31, 2004 on her applications for DIB and SSI which she filed on July 27, 2004. (Tr. 185, 596). The time period for consideration of the DIB claim extends from this alleged onset date to the August 7, 2007 date just before the ALJ found the plaintiff to be totally disabled. With regard to the SSI claim, the proper inquiry is whether the claimant was

disabled on or after the application filing date. Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the relevant time period for the SSI claim runs from the July 27, 2004 filing date through August 7, 2007.

In determining that Peck could return to her past work as a billing clerk, the ALJ relied heavily upon the information provided by Vocational Expert Micha Daoud. The hypothetical question presented to Daoud included an exertional limitation to sedentary level work, restricted from a full range by (1) an inability to more than occasionally balance, stoop, kneel, crouch, crawl and climb ramps or stairs; (2) an inability to ever climb ladders, ropes or scaffolds; and (3) a need to avoid exposure to hazardous machinery and heights. (Tr. 705-706). The witness testified that the job of billing clerk could still be performed. (Tr. 706). This job could still be performed even if one needed a sit/stand option in intervals of 30 to 45 minutes. (Id.). Daoud was later asked to consider the mental limitations of Psychologist Robert Noelker in Exhibit 21F. (Tr. 707). These restrictions included a "marked" limitation in responding appropriately to usual work situations and to changes in a routine work setting, "moderate" limitations in such areas as making judgments on simple to complex, work-related decisions, dealing with complex instructions, interacting appropriately with the public, supervisors and co-workers, and "mild" limitations in dealing with simple instructions. (Tr. 565-566). The expert reported that while these mental restrictions would not be disabling by themselves, they

would preclude performance of the claimant's past relevant work. (Tr. 707). The ALJ relied upon this information to support the administrative decision.

Peck argues that the ALJ erred in failing to find that she suffered from a "severe" mental impairment during the time period relevant to this appeal. Noelker did identify a severe mental impairment during his August 8, 2007 examination. However, the examiner only gave a current Global Assessment of Functioning (GAF) rating and did not attempt to "relate back" the condition for even the past year. (Tr. 563). Under these circumstances, the ALJ's finding that the mental restrictions identified by Noelker began only on the day of the examination was reasonable. Nevertheless, the report also does not eliminate the possibility that the claimant's mental problems were not severe prior to this date.

While Noelker's report does not necessarily support Peck's claim of being disabled during the relevant time period prior to August 8, 2007, the record does contain evidence which supports the existence of a "severe" mental impairment during this time frame. Psychologist Terri Caudill examined the plaintiff in October of 2004 and diagnosed an anxiety disorder and a depressive disorder. (Tr. 296). Caudill rated the claimant's GAF at 60. (Id.). Such a GAF suggests the existence of "moderate" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. The examiner indicated that Peck would be "mildly to moderately" impaired in her ability to interact with others and to respond to day-to-day work

8

pressures.  (Tr. 297).  These limitations, while not as severe as those noted by Noelker, still suggest the existence of a "severe" mental impairment.  These restrictions could well preclude performance of Peck's past semi-skilled work as a billing clerk.  The ALJ did not address these limitations in her denial decision.  (Tr. 120-132).

Dr. Benjamin Kutnicki, Peck's family physician, noted in November of 2006 that she suffered from depression and identified a number of very severe mental limitations related to the condition.  Among the restrictions were a "poor or none" ability in such areas as relating to co-workers, dealing with the public, using judgment, interacting with supervisors, dealing with work stresses, functioning independently, maintaining attention and concentration, dealing with complex job instructions, behaving in an emotionally stable manner, and relating predictably in social situations and a "fair" ability in following work rules, dealing with detailed and simple job instructions and demonstrating reliability.  (Tr. 485-486).  The ALJ gave this opinion no weight because Dr. Kutnicki was not a psychiatrist, was not qualified to comment upon mental limitations, and did not substantiate his opinion with objective or clinical evidence.  (Tr. 130-131).  While these objections may tend to support a finding that this opinion was not fully binding, the report at least provides some support for the plaintiff's claim that her mental problems were "severe" during the relevant time period.

Dr. David Randolph testified at the May, 2007 administrative hearing as a medical advisor. (Tr. 654-687). While Dr. Randolph primarily addressed Peck's physical condition, he did express concern about her mental status. "I'm focusing here on the last couple of years. I am disturbed by a number of factors here from a medical perspective that there appears to be some form of emotional issue, but it's never been addressed by a mental health professional." (Tr. 669). Dr. Randolph indicated that Caudill noted significant mental symptoms during her October, 2004 examination. (Id.). This statement supports the plaintiff's assertion that her mental problems were severe during the relevant time period.

Psychologists Edward Ross (Tr. 333) and Laura Cutler (Tr. 456) each reviewed the record and opined that Peck did not suffer from a "severe" mental impairment. Ross, who saw the record in November of 2004, merely stated that he was giving the opinion of Caudill "proportionate weight" without articulating any reasons why he rejected the findings of the examining source. (Tr. 346). Cutler, who saw the record in February of 2005, only indicated that she was affirming the opinion of Ross without addressing the record. (Tr. 469). Neither reviewer had the opportunity to see and comment upon the assessment of Dr. Kutnicki. The administrative regulations provide that "generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). Therefore, these opinions are not

sufficient to support the administrative decision and a remand of the action for further consideration is required.

The ALJ also erred in evaluating Peck's physical condition. This error provides a second ground to remand the action to the Commissioner for further consideration.

In September of 2005, Dr. Kutnicki indicated that Peck would be unable to lift more than 5 pounds, stand or walk for more than 30 minutes, sit for more than four hours a day, or ever perform postural activities.[1] (Tr. 481-482). The ALJ noted a number of reasons for rejecting this opinion. The ALJ noted that in February of 2005, Dr. Kutnicki identified significantly less severe physical restrictions including an ability to lift up to 20 pounds. (Tr. 129, 401). Significantly, the doctor failed to cite what objective medical data supported the severe decline in her physical abilities by September of 2005. (Tr. 129). The ALJ also cited the testimony of Dr. Randolph, the medical advisor, who did not think that Dr. Kutnicki's severe limitations were well-supported in the medical record. (Tr. 129, 668). The lack of documented neurological compression in the medical record was a major factor in the physician's opinion. (Tr. 668). The court finds that ALJ did have sufficient

---

[1] Dr. Kutnicki indicated in December of 2004 that the plaintiff was disabled. (Tr. 364). The doctor again noted that the claimant was disabled in June of 2006. (Tr. 532). This conclusory opinion would not be binding on the ALJ under the federal regulations at 20 C.F.R. § 404.1527(e)(1).

11

reason to reject the opinion of Dr. Kutnicki as binding. Nevertheless, the opinion does not provide support for the administrative denial decision either.

Dr. Michael Grefer, another treating physician, identified similar severe physical limitations in May of 2007. (Tr. 554-556). The ALJ rejected the opinion of this physician because it did not appear to be well-supported by objective medical data. (Tr. 128-129). The ALJ relied heavily upon Dr. Randolph for this finding who again noted that the lack of evidence of neurological compression was an important factor in his discounting the physical restrictions of Dr. Grefer. (Tr. 129, 665). Dr. Grefer's tendency to dictate the x-ray results into his office notes rather than provide separate x-ray reports made evaluation of his findings difficult for the expert. (Tr. 683). While the ALJ had good reasons to discount the opinion of Dr. Grefer, this opinion also did not support the administrative denial decision.

While Dr. Randolph did not fully credit the functional restrictions imposed by the treating sources, the doctor also noted that both physicians had documented a number of subjective complaints which had some objective support. (Tr. 669). An x-ray of the lumbar spine obtained by Dr. Grefer revealed multilevel disc disease with a mild bulge at L4-L5 and some flattening of the thecal sac and mild to moderate narrowing at L5. (Tr. 518, 656). Dr. Randolph noted there was no sign of neurological compression. (Tr. 656). An EMG of the lower extremities indicated possible L5 or S1 radiculopathy. (Tr. 519, 657). Dr. Grefer also indicated significant range of motion abnormalities of the cervical and lumbar spine in February of 2005.

(Tr. 523, 665).  X-rays of the knees, obtained by Dr. Kutnicki in January of 2005, revealed some degenerative changes on both sides.  (Tr. 355-356, 657).  The medical advisor also did not identify his own functional limitations which would offset those of the treating sources.  (Tr. 684).  Therefore, Dr. Randolph's opinion also does not fully support the administrative decision.

Dr. Timothy Gregg (Tr. 298-307) and Dr. J.E. Ross (Tr. 472-479) each reviewed the record and opined that Peck could perform a restricted range of light level work.  However, these reviewers saw the record in November of 2004 and February of 2005.  Neither had the opportunity to see and comment upon the vast bulk of the medical evidence which was submitted into the record after these dates including the functional capacity assessments of Dr. Grefer and Dr. Kutnicki.  Thus, these reports would not be sufficient to offset the opinions of the actual examining sources as provided by Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) and Social Security Ruling (SSR) 96-6p.  Therefore, a remand for further consideration of the plaintiff's mental condition is also required.

Peck asserts that the ALJ erred in evaluating her obesity.  Obesity was found to be a "severe" impairment for the relevant time period but it was not found to be totally disabling either alone or in combination with other factors.  (Tr. 122).  The ALJ found that a number of other problems relating to this condition would improve if she followed prescribed treatment to lose weight such as diet, exercise and consultation with a bariatric surgeon.  (Tr. 123).  However, SSR 02-1p indicates that

the administration should only consider the issue of compliance with prescribed treatment if obesity is first found to be a disabling condition. Therefore, this error provides another ground to remand the action.

Peck raises a number of arguments with which the undersigned does not agree. The plaintiff notes that the ALJ erred in the finding that she had a high school education. (Tr. 131). The claimant actually indicated that tenth grade was her last year of school placing her in the "limited" education category. (Tr. 635). This error would be significant if the ALJ had decided the case at step five of the sequential evaluation process because Rules 201.02 and 201.10 of the Medical-Vocational Guidelines mandate a finding of disabled status for one of her age, true educational level and work background. However, as previously noted, Peck was found capable of returning to her past relevant work during the relevant time period. (Tr. 131). This means the ALJ decided the case at step four and did not reach step five, at which point the Medical-Vocational Guidelines would become a factor. (Tr. 122). Therefore, this error was harmless.

Peck argues that the ALJ erred in finding that her condition did not meet or equal Sections 1.02A or 1.00B2b of the Listing of Impairments. Dr. Grefer indicated that these sections, as well as 1.04(A), were met or equaled in a May, 2007 letter. (Tr. 552). The defendant notes that under the federal regulations, the determination concerning whether a claimant meets or equals a Listing Impairment is an issue reserved to the Commissioner and, so, Dr. Grefer's opinion on this question would

not be binding. 20 C.F.R. § 404.1527(e)(2).[2] The doctor did not specify how these Listing sections had been met or equaled. Dr. Randolph, the medical reviewer, noted the physician's statement and opined that the evidence did not support a finding that any Listing section had been met or equaled. (Tr. 666-667). The ALJ cited the lack of neurological findings in Dr. Grefer's treatment notes as a reason to reject his findings in addition to the testimony of Dr. Randolph in determining that none of these Listing sections had been met. (Tr. 127-128). Therefore, based on the current record before the ALJ, the court finds no error.

Finally, Peck asserts that Dr. Randolph, as an occupational medicine specialist, was not qualified to comment on her psychological, orthopedic or primary care medical problems which were outside his area of expertise. According to an article by Dr. Thomas McClure, M.D., published on the website of the San Francisco Medical Society, an occupational medicine specialist deals with the prevention and management of injuries for workers in the workplace and the field involves a great deal of overlap with other specialities including those dealing with musculoskeletal problems, pulmonary problems and toxicological problems. See San Francisco Medical Society/What is Occupational Medicine and What do Occupational Medicine Specialists Do?, www.sfms.org, (viewed August 19, 2011). An occupational medicine specialist would appear to the court to be well-qualified to

---

[2] The doctor also indicated that the plaintiff would be totally disabled. (Tr. 552). This conclusory opinion would not binding on the ALJ. 20 C.F.R. § 404.1527(e)(1).

assess the vocational implications of orthopedic and other health problems of a worker seeking disability. Therefore, the court must reject this particular argument of the claimant.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 30th day of August, 2011.

Signed By:

G. Wix Unthank

United States Senior Judge